454 So.2d 1265 (1984)
SUCCESSION OF Gurvey SHEPHERD, Sr.
No. 16370-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
*1266 Kitchens, Benton & Kitchens by John B. Benton, Jr., Minden, for plaintiff-appellant, Loretta S. Butler, Dative Testamentary Executrix of the Succession of Gurvey Shepherd, Sr.
Campbell, Campbell & Johnson by John T. Campbell, Minden, for defendants-appellees, John Henry Shepherd, Jr., Henry Bryan Johnson, and Linda Johnson Porter.
Before HALL, FRED W. JONES and SEXTON, JJ.
HALL, Judge.
The dative testamentary executrix of the succession appeals devolutively from a district court judgment denying her application to sell immovable succession property at private sale. Finding no abuse of discretion by the district court, we affirm.
Gurvey Shepherd, Sr. died in 1963 survived by his widow, a daughter who is the executrix of the succession, and three grandchildren who are the children of the decedent's two sons who predeceased him.
The decedent's will was not probated until 1980 after his widow moved to a nursing home from the family home which was community property and is the property the executrix seeks to sell. The decedent bequeathed the disposable portion of his estate to his wife and granted to her the usufruct of the remainder of his estate. Accordingly, the widow is entitled to ownership of an undivided 12/18 interest in the property, the daughter a 2/18 interest, and the three grandchildren a 4/18 interest. The widow was named executrix in the will but because of the widow's poor health the daughter was named dative testamentary executrix.
The property in question is located at 207 Murrell Street in Minden. The structure located on the site is a one-story, wood-frame residence a little over 50 years old. The area immediately surrounding the house is predominately commercial in nature composed primarily of shops, businesses, and rental property.
After the decedent's widow moved from the house and the succession was opened, the executrix began her attempt to sell the property. For about two years, from December 1980 until December 1982, the property was listed by the executrix with various real estate agencies for prices ranging from $40,000 to $34,000, but no acceptable offer was received. An offer of $25,000 was rejected by the executrix shortly after the property was placed on the market.
In December 1982 the executrix entered into a lease purchase agreement with the real estate broker currently listing the property. The agreement provided for a one-year lease at a monthly rental of $300 and a purchase price of $26,000. The executrix applied for judicial authority to consummate the transaction and is joined by the widow in seeking approval. The application was opposed by the grandchildren. The application of the executrix offered the following reasons as justification for the sale: (1) the elderly surviving spouse has been forced by ill health to move from the property to a nursing home. Left vacant, the house was deteriorating rapidly; (2) funds are needed for payment of succession debts and charges; and (3) the sale would facilitate the ultimate division of the estate.
The sale was opposed on the following grounds: (1) the decedent's succession was free from debt at the time it was opened and at the time of the application for private sale; (2) the sale is not necessary to provide funds for the maintenance and care of the decedent's surviving spouse; (3) the executrix is without power or authority to administer the opponents' legitime because no testamentary bequest was made respecting the forced portion of the decedent's estate, which devolved intestate to the opponents; consequently, the executrix's powers are confined to administration of that portion of the decedent's estate *1267 disposed of in his will; (4) no other valid reasons necessitating the sale exist; (5) the price offered for the property is inadequate; and (6) a public sale would be more advantageous to the succession than the proposed private sale.
The trial court found that when the will was admitted to probate in 1980 no debts were due by the decedent. The surviving widow receives an adequate income for her support. The court noted that although the executrix takes the position that the proposed sale should be approved because of the deteriorating condition of the property, there was evidence by a real estate expert that the property in the neighborhood is becoming commercial and that the house is in good condition. The realtor was of the opinion that the house had a value of $38,000 when he appraised it in October 1983 which was after the proposed buyer had expended approximately $3,000 to get the house in its present condition. The trial court held that although LSA-C. C.P. Art. 3261 authorizes a succession representative to sell succession property in order to pay debts or legacies, or for any other purpose, the succession representative has the burden of establishing the necessity of the sale or the purpose of the sale as being in the best interest of the succession. Otherwise, there would be no reason for the requirements of advertisement, hearings on oppositions, and court approval. The court noted that the principal functions of a succession representative are to collect the assets, pay the debts, and distribute the balance of the property in accordance with the decedent's will. The court was not satisfied that the evidence established that the proposed sale was in the best interest of the succession and found that the evidence did not show that the deterioration of the house was such that a sale was the only way or the best way to preserve the estate. The court noted that the heirs could be sent into possession and that the necessity for the sale or the advantage to the succession was not established.
A succession representative may sell succession property in order to pay debts and legacies, or for any other purpose, when authorized by the court. LSA-C.C.P. Art. 3261. A succession representative who desires to sell succession property at private sale shall file a petition setting forth a description of the property, the price and conditions of, and "the reasons for the proposed sale." LSA-C.C.P. Art. 3281. Notice of the application for authority to sell succession property at private sale must be published. LSA-C.C.P. Art. 3282. Opposition to a proposed private sale may be filed by an heir, legatee, or creditor. LSA-C. C.P. Art. 3283. If no opposition is filed and the court considers the sale "to be to the best interests of the succession", the court shall render an order authorizing the sale. An opposition shall be tried as a summary proceeding. LSA-C.C.P. Art. 3284.
The approval of an application to sell succession property at private sale rests within the sound discretion of the trial court. There must be good reasons for the sale and it must be in the best interest of the succession. Succession of Pipitone, 204 La. 391, 15 So.2d 801 (1943); Caillouet v. Caillouet, 419 So.2d 536 (La. App. 5th Cir.1982); Succession of Lawson, 408 So.2d 992 (La.App. 2d Cir.1981). In allowing private sales of succession property, the requirement of court approval was included as a safeguard against the inappropriate disposition of succession property. Hamilton v. McKee, 371 So.2d 1115 (La.1979); Estate of LaSalle, 377 So.2d 576 (La.App. 3d Cir.1979).
A succession representative has the duty of collecting, preserving, and managing the property of the succession in accordance with law. LSA-C.C.P. Art. 3191. It is the duty of a succession representative to close the succession as soon as advisable. LSA-C.C.P. Art. 3197.
Here, the succession was not opened and the will probated until 17 years after the decedent's death, when there were no debts and charges to be paid. There would seem to be little or no reason for an administration of the succession or the sale of succession property during the *1268 course of an administration, particularly over the opposition of some of the heirs. There would seem to be no reason why the heirs should not be sent into possession of the succession property, to manage or dispose of the property as they see fit. These were appropriate considerations by the trial court, as were the facts that the house was in good condition at the time the application for private sale was filed and that the appraised value of the house substantially exceeded the proposed sales price.
For the reasons assigned, the judgment of the district court is affirmed, at appellant's costs.
AFFIRMED.